*Brown & Stewart,* for Spring Garden Insurance Company of Philadelphia.—The general rule is that so far as an insurance agent acts as broker he is agent for the insured and not for the insurer; and the proposition that a broker who has general charge and control of the placing of an application for insurance, is a proper person upon whom notice of cancellation may be served, unless he has entirely fulfilled his undertaking, is a corollary to that rule, and is well established in law: May on Insurance, 123; Standard Oil Co. v. Triumph Ins. Co., 64 N. Y. 85; Karelsen v. Sun Fire Office, 122 N. Y. 545 (25 N. E. Repr. 921); Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 502; Royal Ins. Co. v. Wight, 55 Fed. Repr. 455; Young v. Newark Fire Ins. Co., 59 Conn. 41 (22 Atl. Repr. 32); Manheim Ins. Co. v. Hollander, 112 Fed. Repr. 549; Pottsville Mut. Fire Ins. Co. v. Minnequa Springs Imp. Co., 100 Pa. 137.

PER CURIAM: March 22, 1909:

The judgments in these cases are affirmed on the opinion of Judge SHAFER.

---

## Standard Leather Company of Pittsburg, Appellant, v. Allemannia Fire Insurance Company of Pittsburg.

*Principal and agent—Ratification or repudiation of the act of agent.*

1. One who knows that his agent has undertaken to do for him what he is not authorized to do, is bound to repudiate the act promptly, and if he does not do so, and especially, if he does anything by way of affirmance of the act, he cannot afterwards repudiate it.

*Insurance—Fire insurance—Principal and agent—Cancellation of policy—Notice to the insured.*

2. Where an agent of an insured is given general powers to place a large line of insurance in various companies with power to cancel policies and replace with other policies without special authority from the principal, to keep an expiration book for an indefinite period and

correct the same every six months, such agent, so long as the line of insurance is not completed, is a proper person, to whom an insurance company may serve notice of cancellation of a policy of insurance procured by him for his principal.

Argued Jan. 19, 1909. Appeal, No. 230, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 2, Allegheny Co., July Term, 1905, No. 310, for defendant on case tried by the court without a jury in suit of Standard Leather Company of Pittsburg v. Allemannia Fire Insurance Company of Pittsburg. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit on a contract of fire insurance.

The case was tried by the court without a jury by agreement of the parties.

SHAFER, J., filed the following opinion:

These three cases were tried without a jury, together with the other insurance cases on the same loss, and present certain features which distinguish them in some respects from the other cases. We find the facts as to the loss and employment of Negley & Clark Company by the plaintiff, the notice and proofs of loss, and the negotiations between the plaintiff and Negley & Clark Company, the making of a binder, and the notice of cancellation of it, to be the same as those found in the case at No. 292, July Term, 1905, with the following additions:

1. These three companies were represented by C. P. Campbell, who was an insurance broker, having an office in the city of Pittsburg, and having one or more employees or clerks in his office, among whom was a young man named A. C. Stewart. Campbell was authorized to issue policies and sign insurance binders for the several companies, but Stewart was not authorized to sign such papers for him or for the companies.

2. When the agent of Negley & Clark Company came to Campbell's office, Campbell was not present, but Stewart was in charge of the office, and upon the proposition being made

to Stewart to sign the binders for these companies, Stewart said to Negley & Clark Company's agent that he would do so, provided they would take the risk of his signature being approved by Campbell. He also said to Negley & Clark's agent that he remembered a loss which some of their companies paid on this same risk some time before, and asked them if patent leather was made there, and was told that it was not. He said that they would not take the risk if patent leather was made there. He thereupon signed the binder in question, signing it "C. P. Campbell, Agent, A. C. S."

3. Stewart saw Campbell that evening and told him what had taken place, and was directed by Campbell to ascertain whether patent leather was in fact made there or not. Thereupon the next day, and the next two or three days thereafter, Stewart looked up the matter at the board of underwriters and elsewhere, and found that patent leather was made there, of which he informed Campbell, and Campbell thereupon directed him to cancel the risk.

4. In the meantime, while Stewart was acquiring this information, forms of policy in accordance with the binder had been written up in the office of Campbell and were given numbers, but were not delivered to anyone. Stewart thereupon wrote a notice of cancellation in the usual form, referring, not to the binders, but to the policies which had been so written, and delivered the same day to Negley & Clark Company.

5. The defendants, in this case, undertook to prove that it was the custom in the city of Pittsburg and vicinity to give notice of cancellation of a binder to the agent who procured it. They produced a number of witnesses who testified under objection that such was the usual custom, and no evidence was produced to the contrary. We find from the evidence that it is, and for many years has been, the actual practice among the insurance brokers and companies in Pittsburg, to give notice of cancellation of insurance effected by binders, to the agent who procured it.

6. It is admitted that if the defendants are liable at all to the plaintiff, the Ben Franklin Company is liable for $1,500,

the Allemannia for $2,500, and the Monongahela Insurance Company for $1,000, with interest from October 15, 1904.

### CONCLUSIONS OF LAW.

1. The first matter to be discussed, which is peculiar to these cases, is the authority of the person who signed the binder. We have found that Stewart had no general authority from Campbell or the companies to sign such a paper, and that the paper was taken by the plaintiff's agents with knowledge of the fact that it would be subject to Campbell's approval. It appears, however, that Campbell knew shortly after the signature was made, that his agent had undertaken to sign for him, and that he never repudiated the signature in any way on the ground of want of authority in Stewart, but, on the contrary, directed the risks to be canceled under the terms of the agreement. This was an affirmance of the signature of Stewart. One who knows that his agent has undertaken to do for him what he is not authorized to do, is bound to repudiate the act promptly, and if he does not do so, and especially, if he does anything by way of affirmance of the act, he cannot afterwards repudiate it.

2. We do not understand it to be claimed that Campbell, as agent for the defendants, was bound to sign all insurance contracts made by him for them, with his own hand. While he might not, without their authority, delegate a general power to represent him to any of his agents, there can be no doubt that he might sign policies by the hand of an agent, where he himself knew and accepted the risk, either before or after the signature, which was the case here.

3. As to the proof of the custom or practice of giving notice of cancellation to the broker, instead of the insured, we are of opinion that no such custom was proved as would modify the legal effect of the contract made in this case.

4. If these conclusions are correct, there is no difference between these cases and the case of No. 292, above mentioned, and we adopt, in addition to the conclusions of law above stated, the conclusions of law heretofore filed in this case.

It is therefore ordered that judgment be entered for the several defendants.

*Errors assigned* were in entering judgment for defendants.

*J. S. Ferguson,* for appellant.

*Patterson, Sterrett & Acheson,* for appellee.

PER CURIAM, March 22, 1909:
The judgment is affirmed on the opinion of Judge SHAFER.

---

# Pile, Appellant, *v.* Prizer.

*Contract—Purchase of mortgages—Bond of guaranty—Warrant of attorney.*

Where a person in purchasing a mortgage stipulates for a personal guaranty bond of the owners in addition to the ordinary bond of the mortgagor, the purchaser cannot demand that the guaranty bond shall contain a warrant to confess judgment where the agreement does not provide for such warrant, and there is nothing to show the existence of any custom in the community requiring that a warrant of attorney for the confession of judgment shall accompany a bond of guaranty.

Argued Jan. 19, 1909.   Appeal, No. 337, Jan. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1906, No. 4,392, on verdict for defendant in case of Charles H. Pile v. Elmer T. Prizer.   Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit for breach of contract.
At the trial the jury under binding instructions returned a verdict for defendant.

The court subsequently refused a new trial, AUDENRIED, J., filing the following opinion: