J-S42011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIMOTHY LAMONT SMITH | : | |
| | : | |
| Appellant | : | No. 69 MDA 2018 |

Appeal from the Judgment of Sentence December 20, 2017
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-CR-0000391-2012

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                 **FILED: JANUARY 2, 2019**

Kimothy Lamont Smith appeals from the judgment of sentence of eighteen to forty-eight months incarceration followed by two years probation, imposed following violation of probation ("VOP").  We affirm.

The underlying criminal charges relate to the execution of a search warrant of Appellant's residence on December 7, 2011.  Authorities recovered, *inter alia*, fifty-three bags of heroin and two bulletproof vests.  Appellant entered a guilty plea to one count of possession with intent to deliver ("PWID"), and one count of unlawful possession of body armor.  On December 10, 2013, the trial court imposed the agreed-upon sentence of three to six years incarceration, followed by four years probation, at PWID.  At the remaining count, Appellant received a concurrent sentence of four years probation.  Appellant received time credit from December 8, 2011, to that

_____

*   Retired Senior Judge assigned to the Superior Court.

date. Therefore, Appellant's sentence effectively commenced on December 8, 2011.

On August 21, 2017, which was prior to Appellant's serving the maximum term of six years incarceration, the trial judge issued a *capias* ordering Appellant's appearance for a probation revocation hearing, which took place on November 22, 2017. Appellant's girlfriend, Holly Waldeck, testified that on February 17, 2017, Appellant became angry when she did not have time to make dinner.[1] Appellant grabbed the cigarette she was smoking out of her mouth, and repeatedly struck her face. Appellant then pushed her to the ground and held the lit cigarette to her shoulder blades. Appellant continued to physically abuse her over the next four days.

On February 22, 2017, Ms. Waldeck visited Appellant's probation[2] officer to report the abuse. Photographs depicting Ms. Waldeck's injuries were taken, which were entered into evidence at the revocation hearing. Appellant was arrested the next day.[3]

_____

[1] The two parties apparently lived together, as later testimony established that the residence where the incidents occurred belonged to Appellant.

[2] The record does not indicate when Appellant was paroled, and the testimony referred to Ms. Waldeck's contact with Appellant's parole officer. For the sake of consistency we elect to refer to him as the probation officer, since the court herein revoked Appellant's probation.

[3] The record offers no explanation for the five-month delay between Ms. Waldeck's report and the commencement of these proceedings on August 21, 2017. As noted in the text *infra*, the testimony established that Appellant was reincarcerated sometime between February and August. Presumably,

Ms. Waldeck's mother, Virginia Stermer, testified that on February 21, 2017, Ms. Waldeck called in the middle of the night and reported Appellant's abuse. Ms. Stermer told her to leave the house. Ms. Stermer later met Ms. Waldeck at the hospital, where she encountered Appellant. He told her that he "f***ed up" and said "he was going to f*** me up." N.T., 11/22/17, at 18.

The Commonwealth also called Jason Westgate, an agent with the Pennsylvania Board of Probation and Parole. Agent Westgate testified that, on August 24, 2017, Appellant "was at SCI Waymart on a parole violation and a detainer was sent up pending his . . . hearing." *Id*. at 22. However, Appellant was mistakenly released and was sent to a halfway house. Agent Westgate picked up Appellant at the halfway house and transported him back to Lackawanna County for the instant hearing. The agent testified that during the ride, Appellant "began making . . . threats against myself and my family and it continued basically for the entire car ride about two hours worth." *Id*. at 23. Appellant stated that "he was going to get me when he got out of jail" and told Agent Westgate to "put a bullet in [Appellant's] head because that would be the only way I would stop him from coming after me." *Id*. at 24.

---

Appellant was ordered to serve the balance of his original term. *See* 61 Pa.C.S. § 6138(a)(2) ("If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted[.]").

- 3 -

Appellant testified and related that on February 21, 2017, he told Ms. Waldeck after a fight that their relationship was over and that she needed to leave. She started screaming and pushed Appellant. Appellant, wanting Ms. Waldeck removed from the house, called 911. While he was on the phone with the dispatcher, Ms. Waldeck took her car keys and left. Appellant testified:

> . . . And I said that I was tired of her threatening me and I told the dispatcher at that time, I said that you don't have to send a squad car no more because she is leaving and she gave my house keys, I gave her her car key and she is leaving. They told me it's too late that they are already coming. When I said to the dispatcher it's not necessary. He said, "Well, it's too late."
>
> I said, "Okay."
>
> And I hung up the phone. She walks to the hospital, I walk back to my house[.]

*Id*. at 31-32.

Appellant also stated that he spoke to the police officers on scene, one of whom advised Appellant to contact his probation officer as a precautionary measure. Appellant stated that Agent Westgate arrested him before he had a chance to do so. On cross-examination, Appellant could not explain Ms. Waldeck's injuries nor why she went to the hospital.

The court revoked Appellant's probation, and on December 20, 2017, sentenced him to twelve to forty-eight months incarceration, followed by two years probation at count one. At the remaining charge, the court imposed a consecutive sentence of six to twenty-four months incarceration. Appellant

thereafter filed a timely post-sentence motion, and filed a notice of appeal on January 4, 2018, before the trial court could rule on the motion. The court issued an order denying the motions on January 5, 2018.[4] Appellant presents the following issues for our review.

1. Whether the weight and sufficiency of the Commonwealth's evidence supported a finding of a technical violation of supervision?

2. Whether the [VOP] court erred in permitting the probation officer to testif[y] regarding Appellant's behavior which statements were not contained in the written violation petition, and of which the Appellant was not provided fair notice, thereby violating his right to due process?

3. Whether the [VOP] court erred when it prohibited Appellant from cross-examining the complainant about her criminal background?

4. Whether the [VOP] court erred when it refused to keep the record open in order to allow Appellant to offer rebuttal testimony and evidence?

5. Whether the [VOP] sentencing court erred and abused its discretion when it imposed harsh, unreasonable and excessive

_____

[4] We treat this appeal from the judgment of sentence as made final by the denial of post-sentence motions. In **Commonwealth v. Borrero**, 692 A.2d 158 (Pa.Super. 1997), we quashed an appeal under similar circumstances where the appeal was from a non-revocation sentence. Therein, the appellant filed a post-sentence motion, followed by a notice of appeal. We quashed the appeal as interlocutory, since the court did not rule on the motions. We noted that the "appeal did not divest the trial court of jurisdiction in this instance," since filing a notice of appeal while post-sentence motions are pending is not permitted. **Id**. at 161 n.4. Here, the VOP court denied the motions, and we treat the appeal as from the final judgment of sentence. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

- 5 -

sentences for a technical violation of Appellant's special probation?

6. Whether the [VOP] sentencing court failed to state on the record the reasons for the sentences imposed?

Appellant's brief at 4 (reordered).

Appellant's first issue alleges that the Commonwealth presented insufficient evidence to sustain a finding of a probation violation. The following standard of review applies.

> When we consider an appeal from a sentence imposed following the revocation of probation, our review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing. Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion. The Commonwealth establishes a probation violation meriting revocation when it shows, by a preponderance of the evidence, that the probationer's conduct violated the terms and conditions of his probation, and that probation has proven an ineffective rehabilitation tool incapable of deterring probationer from future antisocial conduct.

**Commonwealth v. Perreault**, 930 A.2d 553, 557–58 (Pa.Super. 2007) (quotation marks and citation omitted).

We find that the Commonwealth presented sufficient evidence to sustain the finding. "A probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." **Commonwealth v. Colon**, 102 A.3d 1033, 1041 (Pa.Super. 2014) (citations omitted). The received evidence,

which involved Ms. Waldeck's testimony that Appellant subjected her to four days of terror, plus Appellant's threats to murder Agent Westgate and his family, clearly "demonstrate[d] to the court that he is unworthy of probation[.]" ***Commonwealth v. Hoover***, 909 A.2d 321, 324 (Pa.Super. 2006) (citation omitted).

Appellant asserts that the evidence was insufficient because his version of the events as testified to at the hearing was more credible. "It would not make sense for [Appellant] to have called the police if her [*sic*] were the abuser. He believes that the [VOP] court erred when it found the complainant's testimony as credible to support the violation." Appellant's brief at 17-18.

Appellant's argument respecting the credibility of Ms. Waldeck goes to the weight of the evidence, not its sufficiency. "[Small] claims that since there are inconsistencies between various witnesses' testimony, this Court should find the evidence insufficient to convict appellant. . . . [this] challenge goes to the weight of the evidence." ***Commonwealth v. Small***, 741 A.2d 666, 672 (Pa. 1999). Thus, this sufficiency claims fails from the outset. ***Id***.

We nevertheless note that the VOP court was not obligated to accept Appellant's version of events, as the judge's role in a probation revocation proceeding is like that of a judge in a non-jury trial, and includes credibility evaluations. ***Perreault***, ***supra*** at 558 (applying the following standard of review in a VOP proceeding: "We must determine whether the evidence

admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the offenses.") (citation omitted). Accordingly, the Commonwealth presented sufficient evidence as the VOP court was free to credit or discredit the competing accounts, and the finding of a violation is affirmed.

Appellant's next issue alleges that the court erred by permitting Agent Westgate to testify regarding Appellant's threats. Appellant notes that these statements were not contained in the formal petition seeking revocation, and, as a result, Appellant's right to fair notice as a component of due process was violated.

In **Morrissey v. Brewer**, 408 U.S. 471, 488 (1972), the United States Supreme Court held that the minimum requirements of due process in this context include, *inter alia*, "written notice of the claimed violations[.]" **Id**. at 489. There is no doubt that Appellant was entitled to notice that the Commonwealth sought to introduce the threats against Agent Westgate as support for a probation violation. However, Appellant did not object or otherwise complain about the lack of notice at the revocation proceeding, and we therefore deem the issue waived. **See Commonwealth v. Collins**, 424 A.2d 1254 (Pa. 1981) (holding that allegation violator received inadequate notice was waived; "A review of the record . . . reflects that these objections were not raised during that proceeding. The failure to interpose these

objections at any time in the court below precludes their consideration on appeal."); **Commonwealth v. King**, 430 A.2d 990, 991 (Pa.Super. 1981) (noting that previous cases have held that this claim is not subject to waiver; "Recently, however, [**Collins**] has considered this same issue and, *sub silentio*, has overruled these cases by holding that objections not raised during a counselled revocation proceeding will not be considered on appeal.").[5]

Appellant's next claim asserts that the trial court impermissibly prevented him from impeaching Ms. Waldeck with evidence of her prior convictions for unspecified *crimen falsi* convictions. **See** Pa.R.E. 609(a) ("For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement."). As noted by the Commonwealth, Appellant did not pursue that line of inquiry. Instead, Appellant attempted to establish that Ms. Waldeck was currently being supervised due to an unspecified conviction. N.T., 11/22/17, at 12 ("[I]sn't it also true that you are on supervision?"). The Commonwealth objected on relevancy grounds, which the VOP court sustained. Appellant did not attempt to separately introduce evidence of Ms.

---

[5] Notably, the at-issue comments were made after the *capias* was filed. This timeline demonstrates the necessity of issue preservation: The Commonwealth may well have informally told counsel of its intent to present additional evidence following the initiation of formal revocation proceedings.

Waldeck's alleged *crimen falsi* convictions.[6] Therefore, the issue was not before the VOP court and there is no ruling to review.

Appellant's final non-sentencing issue faults the VOP court for refusing to keep the record open in order to permit the development of rebuttal evidence. We find no error. In the related context of challenges to a trial court's decision to deny a request for postponement of trial, we have observed:

[A] trial court's decision to deny a request for a continuance

> will be reversed only upon a showing of an abuse of discretion. ***Commonwealth v. Ross***, 465 Pa. 421, 422 n. 2, 350 A.2d 836, 837 n.2 (1976). As we have consistently stated, an abuse of discretion is not merely an error [in] judgment. ***Mielcuszny v. Rosol***, 317 Pa. 91, 93–94, 176 A. 236, 237 (1934). Rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record...." ***Commonwealth v. Chambers***, 546 Pa. 370, 387, 685 A.2d 96, 104 (1996) (quoting ***Mielcuszny***, 317 Pa. at 93–94, 176 A. at 236).

***Commonwealth v. Randolph***, 582 Pa. 576, 873 A.2d 1277, 1281 (2005) (quoting ***Commonwealth v. McAleer***, 561 Pa. 129, 748 A.2d 670, 673 (2000)).

. . . .

In examining whether a trial court abused its discretion in refusing to grant a continuance for a defendant to retain new counsel, Pennsylvania courts have historically looked at several factors.

---

[6] The record does not establish whether Ms. Waldeck has been convicted of any offenses that qualify as *crimen falsi*. Appellant merely asserts their existence.

> We have generally found that a trial court did not abuse its discretion in denying a request for a continuance to retain new counsel where the trial court conducted an "extensive inquiry" into the underlying causes of defendant's dissatisfaction with current counsel and based upon that inquiry determined that the differences did not constitute "irreconcilable differences." **Commonwealth v. Floyd**, 937 A.2d 494, 496–500 (Pa.Super. 2007) (collecting cases).
>
> We have also looked to the number of prior continuances in the matter, the timing of the motion, whether private counsel had actually been retained, and the readiness of private counsel to proceed in a reasonable amount of time.

**Commonwealth v. Prysock**, 972 A.2d 539, 542–43 (Pa.Super. 2009).

As noted in the foregoing quotation, the timing of the motion is a relevant consideration and the pertinent Rule of Criminal Procedure states:

> Rule 106. Continuances in Summary and Court Cases
>
> . . . .
>
> (D) A motion for continuance on behalf of the defendant shall be made not later than 48 hours before the time set for the proceeding.  A later motion shall be entertained only when the opportunity therefor did not previously exist, or the defendant was not aware of the grounds for the motion, or the interests of justice require it.

Pa.R.Crim.P. 106.

Recognizing that Rule 106 requires advance notice, Appellant argues the Rule does not apply since he did not seek to continue the proceeding: "Appellant did not request a continuance of the proceeding, but rather he requested that the record **be left open** in order to present rebuttal evidence." Appellant's brief at 21 (emphasis in original).  That is a distinction without a difference.  Whether the case is postponed for purposes of delaying the start

- 11 -

of proceedings, or the record kept open for purposes of presenting further evidence, the end result is the same: the case is continued. We therefore look to the nonexclusive list of factors discussed *supra* to determine if the court abused its discretion in refusing his request.

The belated request weighs heavily in favor of finding no abuse of discretion. The order scheduling the November 22, 2017 hearing was issued on October 24, 2017. Therefore, Appellant had approximately one month to prepare for the hearing. Moreover, the *capias* issued on August 21, 2017 set forth the allegations of Ms. Waldeck. If further time was needed to obtain rebuttal evidence regarding those allegations Appellant could have sought a postponement well in advance.[7] Additionally, Appellant did not establish specific reasons justifying the delay. Appellant blames the VOP court for that omission:

> The [VOP] court refused to entertain Appellant's request to offer rebuttal evidence. It did not even inquire into the nature of the rebuttal evidence. Without knowing what evidence he intended to present, Appellant submits that the [VOP] court committed an abuse of discretion. He asserts that if the evidence were cumulative or did not pertain to the substance of the

_____

[7] We acknowledge that Appellant may or may not have known of Agent Westgate's testimony. Assuming *arguendo* that Agent Westgate's testimony was a complete surprise—thereby supplying a justification for the timing of the request—we discern little reason to keep the record open. Agent Westgate testified that he and Agent Rikli drove Appellant. Therefore, the only evidence of what occurred in the vehicle would come from those three men, all of whom were present. N.T., 11/22/17, at 27 ("I just want to point out for the Court that Agent Rikli is in Court today . . . I believe he would echo the same testimony as Agent Westgate.").

> Commonwealth's witnesses' testimony, there may have been a valid basis for the [VOP] court to deny his request.

Appellant's brief at 21-22.

The VOP court doubtlessly could have asked what evidence Appellant would seek to present if given the benefit of time. But there is no reason to hold that the trial court is **required** to prod Appellant for more information. The VOP court's decisions must be made on the basis of the information supplied by the adversaries. The late request, coupled with the non-specific proffer, justified the judge's ruling, and we find no abuse of discretion.

Appellant's final two issues concern his sentence, and we address them together. He first alleges that the VOP court failed to place adequate reasons on the record for the imposed sentence. Next, he claims that the sentence was unduly harsh. Both claims pertain to the discretionary aspects of the sentence, which is not appealable as of right. In order to invoke this Court's jurisdiction, we analyze whether Appellant has: 1) filed a timely notice of appeal; 2) preserved the issue at sentencing or in a post-sentence motion; 3) filed a Pa.R.A.P. 2119(f) statement in his appellate brief; and 4) demonstrated that there is a substantial question that his sentence is inappropriate under the Sentencing Code. *See **Commonwealth v. Moury***, 992 A.2d 162, 169 (Pa.Super. 2010) (citation omitted).

Appellant has failed to invoke our jurisdiction because he did not challenge any aspect of his sentence in the post-sentence motion. ***See Commonwealth v. Jones***, 191 A.3d 830, 835 (Pa.Super. 2018) ("If an

- 13 -

appellant never gives the trial court the opportunity to provide relief, then there is no discretionary act that this Court can review."); ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042–43 (Pa.Super. 2013) ("Although we find that this argument raises a substantial question, his issue is waived for not being preserved in his post-sentence motion or at sentencing.") (citations omitted). We do not have jurisdiction to reach the merits of his sentencing claims as a result of that failure.

Moreover, Appellant did not even present his issue in his Pa.R.A.P. 1925(b) statement. While that would not prevent waiver, it is notable that Appellant alleged only that the sentence was "harsh, unreasonable, and excessive . . . for a technical violation[.]" Concise Statement, 1/25/18, at 1.[8] Appellant did not object to the lack of an explanation until the briefing stage, which comes far too late as it does not give the VOP court an opportunity to rectify the purported error.

---

[8] We encourage the VOP court to re-examine the language contained within the document captioned "***Gagnon*** II Post Sentence Rights," which appears to be a stock form. That document informs defendants that "a motion to modify a sentence imposed after a revocation shall be filed within ten (10) days . . . [t]he Judge must decide that post sentence motion within 120 days, and if the Judge fails to do so, the motion is deemed to be denied by operation of law." This language suggests that the filing of such motion tolls the applicable appeal period. ***See*** Pa.R.Crim.P. 708(E) ("A motion to modify a sentence imposed after a revocation shall be filed within 10 days of the date of imposition. **The filing of a motion to modify sentence will not toll the 30-day appeal period**.") (emphasis added).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/02/19